UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RASHEED AL RUSHAID, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-11-3390** |
| | § | |
| **NATIONAL OILWELL VARCO, INC., et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion for More Definite Statement, or, Alternatively, for Dismissal of Fraud and Conspiracy Claims. (Doc. No. 25.) After considering the motion, all responses thereto, and the applicable law, the Court determines that the motion must be **GRANTED**.

### I. Background

#### A. Factual Background

Rasheed Al Rushaid, Al Rushaid Petroleum Investment Corporation ("ARPD"), and Al Rushaid Parker Drilling Ltd. (collectively, the "Plaintiffs") claim to have been harmed by actions taken by Defendants National Oilwell Varco, Inc.; National Oilwell Varco LP; NOW Oilfield Services, Inc.; and National Oilwell Varco Norway (collectively, the "NOV Defendants"); as well as Grant Prideco LP; and Grant Prideco Holdings LLC (collectively, the "Grant Prideco Defendants"). Plaintiffs allege that the NOV Defendants and the Grant Prideco Defendants (collectively, the "Defendants")

1

acted in concert with former, corrupt employees of ARPD (the "corrupt employees"). According to Plaintiffs, ARPD contracted with Defendants to aid ARPD in procuring equipment and services for the purpose of performing ARPD's contracts with a third company, Saudi Aramco ("Aramco"). Plaintiffs allege that, unbeknownst to ARPD and its Plaintiff owners, Defendants conspired with the corrupt employees to "control and operate ARPD for their own benefit . . . ultimately destroying ARPD . . . and causing massive damage to it and its Plaintiff owners." (Pl. Am. Pet., Doc. No. 1-5 ¶ 27.) Specifically, Plaintiffs allege that Defendants bribed the corrupt employees in an effort to fraudulently induce ARPD to enter into overpriced contracts and pay inflated invoices. (*Id.* ¶ 29.) When Defendants failed to perform on their contracts with ARPD, the corrupt employees allegedly protected Defendants "from sanctions that were otherwise available, including termination of the contracts, replacement by other vendors, civil litigation, and criminal charges." (*Id.* ¶ 31.) Defendants' failures to perform on contracts with ARPD led Plaintiffs to fall short on their contracts with Aramco, which resulted in Plaintiffs paying Aramco "tens of millions of dollars in liquidated damages." (*Id.* ¶ 37.) Plaintiffs assert claims against Defendants for aiding and abetting breach of fiduciary duties, civil conspiracy, fraud by non-disclosure, fraud, and breach of contract. (*Id.* ¶¶ 94-157.)

### B.  Procedural Background

Plaintiffs filed their Original Petition in state court on June 17, 2011. (Pl. Pet., Doc. No. 35-2.) Plaintiffs then filed an Amended Original Petition on August 17, 2011 (Pl. Am. Pet.), after which Defendants filed Special Exceptions on September 2, 2011 (Doc. No. 1-6 at 12-17). Defendants filed an Answer on September 8, 2012, which, though it was filed weeks after Plaintiffs' Amended Petition, stated that it was an Answer

to Plaintiffs' Original Petition. (Def. Answer, Doc. No. 1-6 at 18-20.) Defendants removed the case to this Court on September 16, 2011, pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1331. (Doc. No. 1.) On October 17, 2011, Plaintiffs moved to remand the case to state court. (Doc. No. 6.) The Court denied Plaintiffs' motion on December 6, 2011. (Doc. No. 15.) On February 2, 2012, Defendants filed the pending Motion for More Definite Statement, or, Alternatively, for Dismissal of Fraud and Conspiracy Claims. (Doc. No. 25.)

## II.  Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), a defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 2006 WL 2870972, at *2 (5th Cir. Oct. 9, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1203 (3d ed. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

3

550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 679. The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Allegations of fraud must meet the stricter standards of Federal Rule of Civil Procedure 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the

4

misrepresentation and what he obtained thereby." *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)) (internal quotation marks omitted). The Fifth Circuit has explained that "Rule 9(b) requires 'the who, what, when, where, and how' [of the alleged fraud] to be laid out." *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). A claim that a fraud allegation is insufficiently particular under Rule 9(b) is properly raised by a Rule 12(b)(6) motion to dismiss for failure to state a claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 n. 8 (5th Cir. 2009); *Carter v. Nationwide Property and Cas. Ins. Co.*, 2011 WL 2193385, at *1 (S.D. Tex. June 6, 2011). Rule 9(b)'s particularity requirement is "supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *Grubbs*, 565 F.3d at 185 (quoting *Twombly*, 550 U.S. at 570). Thus, Rule 9(b) "requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000)) (internal quotation marks omitted).

### III. Analysis

#### A.  Timeliness of Defendants' Motion

Plaintiffs contend that Defendants' motion must fail because it was filed after Defendants filed an Answer in state court. Pursuant to Rule 12(b), a motion asserting any defenses under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Defendants counter that, because they answered only Plaintiffs' Original Petition, and not Plaintiffs' Amended Petition, their Answer cannot be considered responsive to the live, Amended Petition.

A number of courts have held that, when a party brings the defense of failure to state a claim by motion after an answer, the motion becomes one under Rule 12(c) rather than one under Rule 12(b)(6). *See e.g.*, *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986); *Jenkins v. Allied Interstate, Inc.*, No. 5:08–CV–125–DCK, 2009 WL 3157399, *2 (W.D.N.C. Sept. 25, 2009); *Kozloski v. Am. Tissue Servs. Found.*, 2006 WL 4037589, **2–3 (D. Minn. Dec. 12, 2006); *Ketterman v. City of N.Y.*, 00 CIV. 1678 (NRB), 2001 WL 579757, *5 (S.D.N.Y.  May 30, 2001); *Pine v. Shell Oil Co.*, C.A. 92-0346B, 1993 WL 389396, **1-2 (D.R.I., Aug 23, 1993); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004). Other courts have allowed such a motion pursuant to Rule 12(b)(6) when it is filed before a defendant answers an *amended* complaint, as here. *See Wright v. Int'l Bus. Machines Corp.,* 796 F. Supp. 1120, 1124 (N.D. Ill. 1992).

One court in the Southern District of Texas, after considering the procedural oddities of this situation and reflecting on the propriety of converting a 12(b)(6) motion

into a 12(c) motion, ultimately did not convert the motion because "pleadings were not closed when the motion was filed. Therefore, the motion cannot be properly called a motion for judgment on the pleadings." *In re Morrison*, 421 B.R. 381, 388-89 (Bankr. S.D. Tex. 2009); *Cf. Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (upholding a district court's conversion of a Rule 12(b)(6) motion to a Rule 12(c) motion when it was filed after an answer when pleadings were closed). This case is factually distinguishable from *Morrison* as, in this case, Defendants' Answer was filed *after* Plaintiffs' Amended Petition, notwithstanding the fact that it stated on its face that it was an Answer to the Original Petition. Moreover, Defendants' Answer was filed by five Defendants who were brought into the case by the Amended Petition, suggesting that the Answer was, in fact, directed toward the Amended Petition. (*Compare* Pl. Pet. (suing only Defendant National Oilwell Varco, Inc.), *and* Pl. Am. Pet. (suing Defendants National Oilwell Varco, Inc; National Oilwell Varco, LP; NOW Oilfield Services, LLC; National Oilwell Varco Norway, AS; Grant Prideco, LP; and Grant Prideco Holding, LLC), *with* Def. Answer (stating that "Defendants National Oilwell Varco, Inc., Now Oilfield Services, LLC, Grant Prideco, LP, and Grant Prideco Holding, LLC file this Original Answer to Plaintiffs' Original Petition.").)

In *Norflet v. John Hancock Fin. Servs., Inc.*, 422 F. Supp. 2d 346 (D. Conn. 2006), the court considered a scenario similar to the one now before this Court. The defendant in *Norflet* filed a motion to dismiss after the plaintiff had amended its complaint, and after the defendant had answered the plaintiff's *original* complaint. *Id.* at 350. Faced with this procedural posture, the *Norflet* court refrained from construing the motion as one under Rule 12(b)(6) or one under Rule 12(c). *Id.* Instead, the court

7

concluded that both types of motions yield identical analyses under the same standard of review, and proceeded to apply that standard, without designating the motion as a Rule 12(b)(6) or Rule 12(c) motion. *Id.* This Court concludes that the present motion is ripe for review, despite its procedural quirks. Rule 12(h)(2) explicitly preserves Defendants' failure to state a claim defense from waiver, and allows it to be raised any time before trial. *In re Morrison*, 421 B.R. 381, 389 (Bankr. S.D. Tex. 2009). The Court thus finds it appropriate to take the *Norflet* court's approach, and to consider Defendants' arguments regardless of which subsection of Rule 12 is to be applied.

### B.  Motion for More Definite Statement/to Dismiss Fraud and Conspiracy Claims

#### 1.  Fraud

A plaintiff seeking to prove a claim of fraud by affirmative misrepresentation must show that (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) the defendant made the representation with knowledge of its falsity, or recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent to induce reliance; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010). Defendants contend both that the misrepresentations in Plaintiffs' petition fail to allege the required elements with the level of particularity required by Rule 9(b), and that the allegations are implausible on their face.

The vast majority of Plaintiffs' response to Defendants' motion emphasizes the sufficiency of allegations unrelated to the alleged misrepresentations. For example,

Plaintiffs explain that their petition "identifies the basic structure of the fraud in that the Defendants bribed the 'Corrupted Employees' to use their authority to approve purchase orders and invoices which contained overcharges which included the kickbacks and the excessive profits, and pay said invoices." (Doc. No. 28 at 4.) This explanation is inapposite; even comprehensive allegations surrounding the circumstances of the alleged bribery do not satisfy the requirements that Plaintiffs plead, with particularity, the purported misrepresentations.

In their Amended Petition, Plaintiffs allege that both the NOV Defendants and the Grant Prideco Defendants made material, false representations. As to the NOV Defendants, Plaintiffs state that these representations included "submitting quotations and other documents setting forth terms and conditions of sale, for equipment and services requested by the Corrupted employees," and, in those documents, making a number of specific "misrepresentations." (Pl. Am. Pet. ¶ 128.) Because Plaintiffs' pleading is imprecise, it is unclear whether Plaintiffs mean to allege that the act of submitting these documents was itself a misrepresentation; that, when submitting these documents, Defendants made verbal misrepresentations *about* the documents; or that the documents themselves contained misrepresentations. However, Plaintiffs' response to Defendants' Motion to Dismiss urges that the makers of the alleged misrepresentations are the NOV Defendants' corporate representatives, and that the "when" is the date of the contract. These clues suggest that Plaintiffs meant to plead that the documents themselves contain the alleged misrepresentations.[1] Plaintiffs' Amended Petition then alleges a number of specific misrepresentations. Defendants' challenges to each supposed misrepresentation

---

[1] The fact that the Court must search for such clues in Plaintiffs' response highlights the inadequacy of Plaintiffs' pleading.

are similar; the Court therefore considers, as a representative claim, the first alleged misrepresentation and Defendants' challenges thereto. Plaintiffs plead that the NOV Defendants misrepresented:

> [T]hat the quotations included market terms and conditions no more onerous to Plaintiffs nor more favorable to the NOV Defendants than would have been quoted absent the conspiracy described above, while knowing at the time that the terms and conditions were in fact more onerous to Plaintiffs and more favorable to the NOV Defendants.

(Pl. Am. Pet. ¶ 128(a).) Defendants challenge the adequacy of this alleged misrepresentation on two grounds. First, they argue, it lacks the specificity required by Rule 9: there is indication as to the maker, the date on which the representation was made, the description of how it was communicated, the name of the person who received it, or how Plaintiffs detrimentally relied on it. Secondly, Defendants emphasize that it is implausible that a contracting party would assure another party, in a written contract, that the terms contained in that contract are no more onerous than might be expected in the absence of a fraud-based conspiracy. The Court takes up these arguments, in turn.

Defendants' first argument, essentially, is that Plaintiffs' pleading lacks the "who," "when," "where," or "how" of the alleged misrepresentation, as is required in the Fifth Circuit. *Benchmark*, 343 F.3d at 724. The Court assumes, for the moment, that Plaintiffs intend to allege that each purported misrepresentation was made in the cited quotations and documents. Because those documents were allegedly provided to Plaintiffs from the NOV Defendants, the Court agrees with Plaintiffs that, accepting this interpretation of Plaintiffs' Amended Petition, the "who" requirement would be satisfied—the NOV Defendants provided the documents that purportedly contain this misrepresentation. As to the "when" question, Plaintiffs contend that, because they list

the dates of each of the quotations and documents in question, the "when" requirement is satisfied as to this and all of the alleged misrepresentations. Because Plaintiffs do not specify which alleged misrepresentation was made in which of the cited quotations and documents, their explanation can be correct only if Plaintiffs mean to allege that every purported misrepresentation was written in each one of the cited documents. Giving such a reading to Plaintiffs' Amended Petition, the Court agrees that the "when" question is satisfied.[2] Plaintiffs specifically identify, by date, amount and Defendants' identification numbers, the contracts and purchase orders which they contend contain these misrepresentations. (Pl. Am. Pet. ¶¶ 79-81.) The "how" and "where" questions are addressed less directly; although Plaintiffs may intend to allege that each of the cited documents contains each of the alleged misrepresentations, they do not say so explicitly, and they leave Defendants and this Court to attempt to discern, with no guidance from the pleadings, when and how each purported misrepresentation was made.

More fundamental than Plaintiffs' satisfaction of the *Benchmark* factors is whether Plaintiffs allege actual misrepresentations at all, and, if so, whether those misrepresentations, as currently alleged, are plausible. In their allegations of the NOV Defendants' first specific misrepresentation, quoted above, Plaintiffs seem to suggest that, within documents provided by the NOV Defendants to Plaintiffs, the NOV Defendants actually stated that the quotations included terms that were no more onerous to Plaintiffs or favorable to Defendants than they would be in the absence of a conspiracy. If Plaintiffs mean to allege that Defendants affirmatively represented as much, the Court agrees with Defendants that such a representation is implausible. If, on

---

[2] Whether this is the appropriate reading of Plaintiffs' Amended Petition is a more fundamental question, addressed below.

the other hand, Plaintiffs mean that Defendants, simply by providing these documents, suggested that they were legitimate and not based on a conspiracy, then such an act likely would not constitute an affirmative misrepresentation. A third possibility is that Plaintiffs mean to allege that Defendants provided incorrect market terms and conditions in the quotations and documents, and that these market terms and conditions were themselves affirmative misrepresentations. In any event, it is not clear what Plaintiffs intend to allege, and the allegations therefore are insufficient. In light of the lack of clarity and precision in Plaintiffs' pleadings, the Court instructs Plaintiffs to amend their fraud by affirmative misrepresentation claims as follows:

> (1) To the extent that Plaintiffs mean to allege that the NOV Defendants and the Prideco Defendants made affirmative, written misrepresentations in the quotations and documents cited in Plaintiffs' petition, Plaintiffs must specify as much within their complaint, and must offer more precision as to the nature of each misrepresentation.[3] Plaintiffs must indicate, as to each alleged misrepresentation, whether that particular misrepresentation was written in *all*

---

[3] For example, as discussed above, the first alleged misrepresentation reads as follows. "[T]hat the quotations included market terms and conditions no more onerous to Plaintiffs nor more favorable to the NOV Defendants than would have been quoted absent the conspiracy described above, while knowing at the time that the terms and conditions were in fact more onerous to Plaintiffs and more favorable to the NOV Defendants." (Pl. Am. Pet. ¶ 128(a).) As the Court has noted, it seems highly unlikely that Plaintiffs mean to allege that Defendants actually stated, in documents provided to Plaintiffs, that the terms were not fraudulent. If Plaintiffs mean to allege that the documents included inaccurate information, and that this inaccurate information was intentionally misrepresented, Plaintiffs must specify as much. Similarly, another one of Plaintiffs' allegations states that Defendants misrepresented "that the quoted prices did not conceal hidden charges to cover kickbacks and wrongfully inflated profits." (*Id.* ¶ 128(c).) Again, it is implausible that Defendants would include, in documents provided to Plaintiffs, a statement that the quoted prices did not conceal hidden, illegitimate charges. Rather, Plaintiffs may mean to allege that Defendants misrepresented prices by offering, instead of accurate prices, prices that were inflated to cover kickbacks and wrongfully inflated profits. If that is the intended meaning, Plaintiffs must specify as much. As currently pled, a number of the alleged misrepresentations suffer from a similar lack of clarity. (*See, e.g.*, Pl. Am. Pet. ¶¶ 128(a), 128(c), and 128(d).)

of the cited documents, whether it was included in only some of the cited documents (and, if so, which documents), or whether it was made orally.[4]

(2) To the extent that any of the alleged misrepresentations were oral, and were not included in the written contracts, Plaintiffs must provide more information about when these oral representations were made, and by whom and to whom they were made.[5]

### 2. Conspiracy to Commit Fraud

Plaintiffs also allege that Defendants engaged in conspiracy to commit fraud. "The elements of a cause of action for civil conspiracy in Texas are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 808 (S.D. Tex. 2009) (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1990); *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). Defendants note that there is not a single

---

[4] By way of example, the Court considers how one of the alleged misrepresentations in Plaintiffs' Amended Petition could be improved to specify exactly what the misrepresentation was, and in what context it was made. Paragraph 142 of the Amended Petition currently reads as follows: "Grant Prideco misrepresented, without limitation, its intent to deliver goods and services as scheduled and specified, while knowing at the time of making the representations that it did not so intend." (Pl. Am. Pet. ¶ 142.) An improved allegation might read: "In XYZ document(s), delivered to Plaintiffs by Grant Prideco on XYZ date, Grant Prideco specifically stated that it intended to deliver goods and services as scheduled and specified in that document. This was a misrepresentation, because Grant Prideco knew at the time of making the representation that it did not so intend."

[5] As the Court has explained, if Plaintiffs mean to allege that all of the purported misrepresentations were in writing, Plaintiffs must be far more explicit in indicating as much. On the other hand, if they intend to allege that any of the misrepresentations was oral, they must provide further context, indicating who made the representation, where it was made, to whom, and under what circumstances. The Fifth Circuit has, as Plaintiffs note, recognized that the Rule 9 pleading requirements "may be relaxed in certain circumstances-when, for instance, the facts relating to the fraud are peculiarly within the perpetrator's knowledge." *United States ex. rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 330 (5th Cir. 2003). However, Plaintiffs' Amended Petition is at this point far too vague for the Court even to consider whether this relaxed standard should be applied, as the Court cannot yet grasp the contours of the alleged misrepresentations.

allegation in Plaintiffs' entire Amended Petition of a meeting of the minds between the allegedly corrupt employees and any Defendant. Similarly, there are no allegations of any type of communication between said parties through which an agreement could possibly have been reached. Finally, Plaintiffs fail to identify any employee of any Defendant entity who could have participated in any such agreement.

Plaintiffs' response to Defendants' motion focuses on the overt acts allegedly taken in furtherance of the conspiracy, and fails adequately to address Defendants' argument about the absence of an agreement. Plaintiffs note only that "[t]he relationship of the parties and the commonality of overt acts - bribery and disregard of performance by the Defendants - with the three 'Corrupted Employees' show the existence of a conspiracy." (Doc. No. 28 at 7.) Plaintiffs urge that, from this, "[a] reasonable person could infer that a conspiracy existed and was executed." (*Id.*) In support of this proposition, Plaintiffs cite to *Grubbs*, 565 F.3d at 193-94.

In *Grubbs*, the Fifth Circuit considered conspiracy allegations which stated that two defendants had had a meeting; the allegations provided the specific language alleged to have been exchanged between the two at the meeting. The Fifth Circuit held that the specific language attributed to these two defendants at the meeting indicated, or at least provided a basis from which a reasonable jury could infer, that the two defendants were in agreement. *Id.* Thus, unlike here, where no meeting is alleged to have taken place, the allegations in *Grubbs* included both a meeting and the specific language exchanged at that meeting. The Court concludes that the absence of *any* allegations as to a meeting or discussion of any sort between the allegedly corrupt employees and Defendants renders that claim inadequately pled. The Court therefore grants Defendants' motion. Plaintiffs

14

will have the opportunity to replead their conspiracy claim, including allegations of an agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants' motion must be **GRANTED** as to the claims discussed herein. Plaintiffs are given leave to file an Amended Complaint, and must do so no later than June 14, 2012. If no Amended Complaint is filed, Plaintiffs' fraud by affirmative misrepresentation and conspiracy claims will be dismissed.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 1st day of June, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE