IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RASHEED AL RUSHAID, ET AL.,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 11-CV-3390 |
| **NATIONAL OILWELL VARCO, INC., ET AL.,** | § § § § | |
| Defendants. | § § | |

## ORDER

Defendant National Oilwell Varco Norway AS ("NOV Norway") has filed a Motion to Compel Arbitration. (Doc. No. 98.) The Court held a hearing on this matter on February 6, 2013. After considering the motion, all responses thereto, and the applicable law, the Court finds that Defendant NOV Norway's Motion to Compel Arbitration must be **DENIED.**

### I.  BACKGROUND

Rasheed Al Rushaid, Al Rushaid Petroleum Investment Corporation ("ARPD"), and Al Rushaid Parker Drilling Ltd. (collectively, the "Plaintiffs") claim to have been harmed by actions taken by Defendants National Oilwell Varco, Inc.; National Oilwell Varco LP; NOW Oilfield Services, Inc.; and National Oilwell Varco Norway (collectively, the "NOV Defendants"); as well as Grant Prideco LP; and Grant Prideco Holdings LLC (collectively, the "Grant Prideco Defendants"). Plaintiffs allege that the NOV Defendants and the Grant Prideco Defendants (collectively, the "Defendants") acted in concert with former, corrupt employees of ARPD (the "corrupt employees"). According to Plaintiffs, ARPD contracted with Defendants to aid ARPD in procuring equipment and services for the purpose of performing ARPD's contracts with a

1

third company, Saudi Aramco ("Aramco"). (2nd Am. Compl., Doc. No. 60 ¶ 11.) Plaintiffs allege that, unbeknownst to ARPD and its Plaintiff owners, Defendants conspired with the corrupt employees to "control and operate ARPD for their own benefit . . . ultimately destroying ARPD . . .." (*Id.* at ¶ 40.) Specifically, Plaintiffs allege that Defendants bribed the corrupt employees in an effort to fraudulently induce ARPD to enter into overpriced contracts and pay inflated invoices. (*Id.* ¶ 23.) When Defendants failed to perform on their contracts with ARPD, the corrupt employees allegedly protected Defendants "from sanctions that were otherwise available, including termination of the contracts, replacement by other vendors, civil litigation, and criminal charges." (*Id.* ¶ 44.) Defendants' failures to perform on contracts with ARPD led Plaintiffs to fall short on their contracts with Aramco, which resulted in Plaintiffs paying Aramco "tens of millions of dollars in liquidated damages." (*Id.* ¶ 48.) Plaintiffs assert claims against Defendants for breach of contract, aiding and abetting breach of fiduciary duties, fraud and conspiracy.

The subject of this motion is whether the contract between ARPD and NOV Norway contained an arbitration clause. In November 2005, ARPD entered into a series of contracts with Aramco to supply certain drilling services. (*Id.* at ¶¶ 11-12.) ARPD then entered into contracts with Defendants to purchase equipment for these oil rigs. (*Id.* at ¶ 15.) The contracts were formed when Defendants submitted quotations to ARPD, which were subsequently accepted by ARPD when it issued purchase orders for the equipment. (*Id.* at ¶¶ 15-16.) The quotations also included certain terms and conditions applicable to the transactions.

The first of these contracts was formed in January 2006, when NOV Norway provided a quote. (Doc. No. 98, Ex. A.) Section 3.1 of the quotation and contract states:

> Terms and conditions are based on the general conditions stated in the enclosed ORGALIME S 2000. (Doc. No. 98-2 p. 6.)

2

Paragraph 44 of the ORGALIME S 2000 states that:

> All disputes arising out of or in connection with the contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules. (Doc. No. 98-3 p. 4.)

This suit was removed to federal court in September 2011. NOV Norway was served on October 15, 2012. (Doc. No. 82.) NOV Norway then filed this motion to compel arbitration on November 19, 2012. (Doc. No. 98.)

## II. LEGAL STANDARD

A two step inquiry governs whether parties should be compelled to arbitrate. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). First, courts must determine whether the parties agreed to arbitrate the dispute. Id. The burden of establishing the existence of such an agreement is on the party seeking to compel arbitration. *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex.App.-San Antonio 2000, pet. dism'd by agr.). That party must establish, by a preponderance of the evidence, that such an agreement exists. *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005). The determination of whether there exists a valid agreement to arbitrate is decided by reference to state law. *Id*.

Once it is determined that such an agreement exists, the burden shifts to the party opposing arbitration to show that the agreement is not enforceable, or that the dispute does not come within the scope of the agreement. In deciding this issue, the court must consider whether any federal statute or policy renders the claims non-arbitrable. *Id*.

The Federal Arbitration Act provides for a stay of proceedings in district courts when an issue in the proceedings is referable to arbitration. 9 U.S.C. § 3. However, where all of a plaintiff's claims are arbitrable, the legal action may be dismissed. *See, e.g., Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir.1999) (because all of the issues raised before the district

court were arbitrable, dismissal of the case was not inappropriate); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (because "all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.").

### III. ANALYSIS

The two issues before the Court are whether the parties' contract contained a valid agreement to arbitrate and whether that agreement is enforceable.

#### A. Existence of a Valid Agreement to Arbitrate

NOV Norway argues that the contract between ARPD and NOV Norway contained an express agreement to arbitrate since the contract is "based on" ORGALIME S 2000, which contains an arbitration agreement in paragraph 44. While paragraph 44 of ORGALIME S 2000 does contain an arbitration clause, the Court is not convinced that this arbitration clause is incorporated into the agreement between ARPD and NOV Norway.

The contract at issue is based on a January 2006 price quotation for a portable top drive provided by NOV Norway to ARPD. The quotation itself does not contain an express agreement to arbitrate. (Doc. No. 103, Ex. F.) Instead, the quotation states that "[t]he terms and conditions are based on the general conditions stated in the enclosed ORGALIME S 2000." (Doc. No. 98-2 p. 6.) "Based on" does not equate to "govern", nor does it indicate that the ORGALIME S 2000 is adopted by the quotation. In other contexts, courts have considered the term "based on" or "based upon" and determined that it means supported by but not actually derived from. *See Sierra Club v. Envtl. Prot. Agency*, 356 F.3d 296, 306 (D.C. Cir. 2004) (rejecting the argument that "based on" means "sole basis"); *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1111 (9th Cir. 2000) (noting that, in the context of various statutes, courts have held that the phrase "'based on'

4

is synonymous with 'arising from' and ordinarily refers to a 'starting point' or a 'foundation' "); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992) ("As a matter of common usage, the phrase "based upon" is properly understood to mean "supported by."").

Further indication that the ORGALIME S 2000 was not meant to govern the contract is found in a section of the price quotation entitled "**TERMS & CONDITIONS**". If the ORGALIME S 2000 were to be adopted in full by the quotation, there would be no need for a separate "Terms & Conditions" in the quotation. A comparison of the quotation and the ORGALIME S 2000 indicate that there is an overlap of terms, such as delivery times and payment terms. These overlapping terms indicate that the quotation is "based on" and not governed by the ORGALIME S 2000.

Therefore, "based on" does not incorporate the ORGALIME S 2000, and thereby does not incorporate the arbitration clause contained in paragraph 44. The Court finds that there is no express agreement to arbitrate between ARPD and NOV Norway.

### B. Waiver of Agreement

However, even if there were an express agreement to arbitrate, NOV Norway has waived that right. *Nicholas v. KBR*, 565 F.3d 904 (5th Cir. 2004) ("The right to arbitrate a dispute, like all contract rights, is subject to waiver."). "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 496-97 (5th Cir. 1986). A party generally invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims. *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002). But "waiver can also result from some

overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id*. (internal quotations omitted). One of the primary goals of arbitration is to avoid the expense of litigation. *Price v. Drexel Burnham Lambert, Inc*., 791 F.2d 1156, 1158 (5th Cir.1986). "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *Nicholas*, 565 F.3d at 910. The two questions to determine whether there has been waiver is (1) whether NOV Norway substantially invoked the judicial process and (2) whether ARPD was prejudiced by it.

This case was removed to federal court on the basis of the arbitration clause by Defendants National Oilwell Varco, Inc., National Oilwell Varco, LP, NOW Oilfield Services, LLC, Grant Prideco, LP, and Grant Prideco Holding, LLC in September 2011. (Doc. No. 1) NOV Norway was not a removing party and Plaintiff did not serve NOV Norway until October 2012. While NOV Norway argues that any delay was due to Plaintiff's delay in service, Plaintiff told the Court at the February 6, 2013 hearing that NOV Norway's counsel refused service. Since NOV Norway refused service, Plaintiffs had to serve NOV Norway under the Hague Convention, which required a lengthier process. While Plaintiffs proceeded to serve NOV Norway through the Hague Convention, the other Defendants moved forward with the case. Defendants, including NOV Norway, are all represented by the same counsel.

Instead of moving to compel arbitration after removal, Defendants moved forward with discovery. Defendants served over 400 separate document requests and 129 interrogatories, which included dozens of requests for documents and information concerning NOV Norway. (Doc. No. 103 p. 6.) Plaintiff reported producing over 130,000 pages of documents. (*Id.* at p. 7.) Defendants also agreed to a scheduling order (Doc. No. 64), moved for a more definite statement (Doc. No. 25), filed initial disclosures (Doc. No. 27), served subpoenas on third-parties and

sought related protective orders from the Court (Doc. Nos. 29, 33, 54, 55), and answered the complaint and asserted counterclaims. (Doc. No. 68.)

In *Nicholas*, the Fifth Circuit affirmed denial of a motion to compel arbitration where the party seeking arbitration "filed an amended complaint, made initial disclosures, engaged in a meet-and-confer, and responded to [defendant's] discovery requests." 565 F.3d at 909. Similarly, in *Miller Brewing*, the defendant announced its intention to seek arbitration but never took steps to actually compel arbitration. The defendant subjected plaintiff to substantial and expensive discovery, costing the plaintiff in excess of $85,000 in discovery-related legal fees. *Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986). The Fifth Circuit held that a party "may not invoke arbitration and yet seek pre-trial discovery going to the merits.... [A]ny attempt to go to the merits and to retain still the right to arbitration is clearly impermissible." *Id.* at 498 (citations omitted). In line with Fifth Circuit precedence, this Court finds that Defendants substantially invoked the litigation process, benefitting from liberal discovery, and costing Plaintiffs hundreds of thousands of dollars in discovery related legal fees. (Doc. No. 103 p. 20.) NOV Norway claims that it only recently appeared in this action. However, NOV Norway does not dispute the interrelation between NOV Norway and the other NOV defendants. NOV Norway is a wholly-owned subsidiary of, and is controlled by, NOV Inc., which has been present in this action from the first day of litigation. (Doc. No. 103 p. 18.) Furthermore, NOV Norway has benefitted from discovery. Among Plaintiffs' nearly 400 documents requests are requests for:

- o "All documents which prove or support your allegations made in paragraph 44 of the petition that records show indisputably that NOV US and NOV Norway paid kickbacks into accounts controlled by Caplis, Shetty, and Wight." (Doc. No. 103, Ex. Q at Request 44.)

- "All documents which prove or support your allegations made in paragraph 69 of the petition that NOV Norway was part of the alleged conspiracy, acted in furtherance of it, and profited from it." (*Id.* at Request 62.)
- "All documents which prove or support your allegations made in paragraph 69 of the petition that NOV US directed the procurement of goods and services for ARPIC from NOV Norway." (*Id.* at Request 64.)
- "All documents which evidence the 'fraudulently induced purchase orders' alleged in paragraph 72 of the petition and which evidence that 'the Corrupted Employees' submitted said purchase orders to NOV Norway." (*Id.* at Request 65.)

The Court finds that Defendants, including NOV Norway, have substantially invoked the litigation process. The parties have spent over a year-and-a-half litigating in federal court. Discovery has been well under way under the federal rules with Plaintiffs producing over 130,000 pages of documents and expending hundreds of thousands of dollars in discovery related legal fees. Even before NOV Norway was served, it benefitted from discovery. As a result, Plaintiffs are prejudiced as defined by the Fifth Circuit. Even if there were an express agreement to arbitrate, NOV Norway has waived its rights.

### IV. CONCLUSION

For the reasons discussed above, Defendant NOV Norway's Motion to Compel Arbitration is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 18th day of March, 2013.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE