IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RASHEED AL RUSHAID, ET AL.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 11-CV-3390 |
| | § | |
| **NATIONAL OILWELL VARCO, INC., ET AL.,** | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Defendants have filed a Motion to Compel Arbitration and Stay, or Alternatively, to Remand or Stay. (Doc. No. 133.) The Court held a hearing on this matter on March 3, 2015. After considering the motion, all responses thereto, and the applicable law, the Court finds that Defendants' Motion must be **GRANTED IN PART** and **DENIED IN PART.**

**I.  BACKGROUND**

Rasheed Al Rushaid, Al Rushaid Petroleum Investment Corporation ("ARPD"), and Al Rushaid Parker Drilling Ltd. (collectively, the "Plaintiffs") claim to have been harmed by Defendants National Oilwell Varco, Inc.; National Oilwell Varco LP; NOW Oilfield Services, Inc.; and National Oilwell Varco Norway (collectively, the "NOV Defendants"); as well as by Grant Prideco LP; and Grant Prideco Holdings LLC (collectively, the "Grant Prideco Defendants"). Plaintiffs allege that the NOV Defendants and the Grant Prideco Defendants (collectively, the "Defendants") acted in concert with former, corrupt employees of ARPD (the "corrupt employees"). According to Plaintiffs, ARPD contracted with Defendants to aid ARPD in procuring equipment and services for the purpose of performing ARPD's contracts with a

1

third company, Saudi Aramco ("Aramco"). (2nd Am. Compl., Doc. No. 60 ¶ 11.) Plaintiffs allege that, unbeknownst to ARPD and its Plaintiff owners, Defendants conspired with the corrupt employees to "control and operate ARPD for their own benefit . . . ultimately destroying ARPD[.]" (*Id.* at ¶ 40.) Specifically, Plaintiffs allege that Defendants bribed the corrupt employees in an effort to fraudulently induce ARPD to enter into overpriced contracts and pay inflated invoices. (*Id.* ¶ 23.) When Defendants failed to perform on their contracts with ARPD, the corrupt employees allegedly protected Defendants "from sanctions that were otherwise available, including termination of the contracts, replacement by other vendors, civil litigation, and criminal charges." (*Id.* ¶ 44.) Defendants' failures to perform on contracts with ARPD led Plaintiffs to fall short on their contracts with Aramco, which resulted in Plaintiffs paying Aramco "tens of millions of dollars in liquidated damages[.]" (*Id.* ¶ 48.)

Plaintiffs assert claims against Defendants for breach of contract, aiding and abetting breach of fiduciary duties, fraud and conspiracy. In November 2005, ARPD entered into a series of contracts with Aramco to supply certain drilling services. (*Id.* at ¶¶ 11-12.) ARPD then entered into contracts with Defendants to purchase equipment for these oil rigs. (*Id.* at ¶ 15.) The contracts were formed when Defendants submitted quotations to ARPD, which were subsequently accepted by ARPD when it issued purchase orders for the equipment. (*Id.* at ¶¶ 15-16.) The quotations also included certain terms and conditions applicable to the transactions.

The first of these contracts was formed in January 2006, when National Oilwell Varco Norway ("NOV Norway") provided a quote. (Doc. No. 133, Exh. A.) Section 3.1 of the quotation and contract states:

> Terms and conditions are based on the general conditions stated in the enclosed ORGALIME S 2000. (Doc. No. 133, Exh. A at 5.)

Paragraph 44 of the ORGALIME S 2000 states that:

2

> All disputes arising out of or in connection with the contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules. (Doc. No. 98, Exh. B at 4.)

NOV Norway previously filed a Motion to Compel Arbitration, arguing that the January 2006 contract between ARPD and NOV Norway contained an express arbitration agreement. (Doc. No. 98.) This Court found that the phrase "based on" in Section 3.1 of the quote did not incorporate the ORGALIME S 2000 and that there was no express agreement to arbitrate. *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, No. 11-CV-3390, 2013 WL 1124070, at *3 (S.D. Tex. Mar. 18, 2013) *vacated and remanded*, 757 F.3d 416 (5th Cir. 2014). This Court further determined that, even if there were an express agreement, NOV Norway had waived that right because the Defendants had "substantially invoked the litigation process." *Id*. at *4.

NOV Norway appealed this Court's decision and the Fifth Circuit reversed. *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416 (5th Cir. 2014). The Fifth Circuit determined that there was a valid arbitration agreement because "based on" incorporated the ORGALIME S 2000 into the ARPD/NOV Norway contract. The Fifth Circuit further found that NOV Norway had not waived its right to arbitration because it had not substantially invoked the litigation process and because the actions of the other Defendants could not be attributed to NOV Norway. Importantly for purposes of the present Motion, the Fifth Circuit did not address NOV Norway's contention that none of the Defendants had substantially invoked the litigation process. *Id*. at 422.

Also unaddressed by the Fifth Circuit was the status of the other Defendants' rights to arbitration. Defendants had asked that court "to hold that the doctrine of equitable estoppel requires the district court to stay all proceedings pending the outcome of arbitration." *Id*. at 424. The Fifth Circuit declined to do so, remanding to this Court the question of whether to stay the

proceedings concerning the other parties under the doctrine of equitable estoppel.

Upon remand to this Court, all Defendants filed a Motion to Compel Arbitration and Stay, or Alternatively, to Remand or Stay. (Doc. No. 133, hereinafter "Motion to Compel Arbitration.") Defendants make four arguments, in the alternative, as to further judicial proceedings: (1) Plaintiffs are equitably estopped from denying all claims and parties in this suit are subject to arbitration in accordance with the ORGALIME S 2000, because the claims are based on the same facts, inherently inseparable, involve allegations of interdependent and concerted misconduct, and require reference to the NOV Norway contracts in which ARPD agreed to arbitration; (2) ARPD's contracts with NOV US contain a distinct arbitration clause, requiring Plaintiffs to arbitrate their claims against NOV US and Grant Prideco; (3) any claims not subject to arbitration should be remanded to state court; and (4) any claims not subject to arbitration and not remanded to state court should be stayed. The Court will consider each argument in sequence.

## II. ARBITRATION BASED ON THE ORGALIME S 2000

Defendants first argue that all parties are subject to arbitration pursuant to the ORGALIME S 2000. They contend that Plaintiffs should be compelled to arbitrate under principles of equitable estoppel.

### A. Legal Standard

Section two of the Federal Arbitration Act, 9 U.S.C. § 2, "makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Andersen, LLP, et al. v. Carlisle, et al.*, 556 U.S. 624, 629-30 (2009) (quoting 9 U.S.C. § 2). Section three, "in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2." *Id*. at 630. "Neither § 2 nor § 3,

however, 'purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014) (quoting *Arthur Andersen*, 556 U.S. at 630). "These 'background principles' of state contract law, when relevant, 'allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Id*. (quoting *Arthur Andersen*, 556 U.S. at 631 (internal quotations omitted)).

The parties in this case agree that Texas law governs the agreement between NOV Norway and ARPD. *Al Rushaid*, 757 F.3d at 419. The relevant question for the Court, therefore, is whether principles of Texas contract law will allow the arbitration provision present in the ORGALIME to be enforced against the non-signatory parties. The principle relied on by Defendants is equitable estoppel. The initial burden of establishing a valid agreement to arbitrate and that the dispute falls within the agreement's scope is theirs. *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 4119994, at *3 (N.D. Tex. Aug. 17, 2012) *report and recommendation adopted*, No. 3:11-CV-2743-O, 2012 WL 4169164 (N.D. Tex. Sept. 17, 2012).

In *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000), the Fifth Circuit adopted the Eleventh Circuit's formulation for determining when equitable estoppel allows a non-signatory to compel arbitration:

> *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and*

5

> *concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.*

*Id.* at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal citations and quotation marks omitted; emphasis in *Grigson*). Initially, the Texas Supreme Court considered *Grigson*'s formulation as a "substantially correct statement of Texas law." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006). The next year, however, the Texas Supreme Court further clarified the contours of equitable estoppel under Texas law. In *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007), the Texas Supreme Court refused to compel arbitration "based solely on interdependent and concerted misconduct." *Id.* at 191. The Court reasoned that, "while conspirators consent to accomplish an unlawful act, that does not mean they impliedly consent to each other's arbitration agreements." *Id.* at 194. *See also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) (citing *In re Merill Lynch Trust Co. FSB* as "recognizing estoppel may bind a nonsignatory to an arbitration agreement but holding plaintiffs were not bound to arbitration agreement under 'concerted misconduct estoppel' because it was not a recognized theory of estoppel under Texas law"); *Inland Sea, Inc. v. Castro*, 420 S.W.3d 55, 59 (Tex. App. 2012) (noting that the Texas Supreme Court has refused to adopt concerted misconduct estoppel).

Thus, the prong of *Grigson* left standing in Texas is "direct benefits estoppel." *See, e.g.*, *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82 (Tex. App. 2014) ("The application of the equitable estoppel doctrine to arbitration clauses in Texas is limited to the direct benefit prong."); *In re East Rio Hondo Water Supply Corp.*, No. 13-12-00538-CV, 2012 WL 5377898, at *5 (Tex. App. Oct. 29, 2012); *In re Trammell*, 246 S.W.3d 815, 821 (Tex. App. 2008). In shaping the contours of direct benefits estoppel, the Texas Supreme Court has applied

6

the concept to non-signatory plaintiffs as well as to signatory plaintiffs. *See Meyer*, 211 S.W.3d at 305 ("sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa"); *see also VSR Financial Services, Inc. v. McLendon*, 409 S.W.3d 817, 831 (Tex. App. 2013) ("if a party or nonparty seeks to derive a benefit from a contract containing an arbitration clause, he may be compelled to arbitrate under the doctrine of 'direct benefits estoppel'"). The Court held that "a nonparty may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.'" *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex. 2005)). "The Texas Supreme Court has explained that 'whether a claim seeks a direct benefit from a contract' depends on whether 'liability arises solely from the contract or must be determined by reference to it' or whether 'liability arises from general obligations imposed by law.'" *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82-83 (Tex. App. 2014) (quoting *Weekley Homes, L.P.,* 180 S.W.3d at 132). Direct benefits estoppel can also apply where a non-party has sought to obtain benefits from the contract by means other than a lawsuit, such as by its conduct during the performance of the contract. *Weekley Homes, L.P.*, 180 S.W.3d at 132-133.

**B. Analysis**

Defendants seek to compel arbitration by all parties on the basis of the NOV Norway/ARPD contract containing the ORGALIME S 2000. The question for the Court, therefore, is whether Plaintiffs claim some direct benefit – *against the NOV US and Grant Prideco Defendants* – stemming from the NOV Norway/ARPD contract. Because Plaintiffs do not make such a claim, the Motion to Compel Arbitration on that basis must be denied.

Plaintiffs' claims against the various Defendants are not easily sorted out. Throughout the Second Amended Complaint (Doc. No. 60), Plaintiffs refer to "NOV," seemingly all of the National Oilwell Varco-related entities, without Grant Prideco. They allege concerted misconduct by the Defendants, such as that the "NOV and Grant Prideco Defendants" conspired with the corrupt employees to "with[hold] information about Defendants' non-performance from ARPD's more senior management and ARPD's Plaintiff owners." (Doc. No. 60 at ¶74.) What Plaintiffs do *not* allege, however, is any claim based on the NOV Norway/ARPD contract that would be enforced against the NOV US and Grant Prideco Defendants. Nor is there anything in the record showing that Plaintiffs ever sought to reap benefits from the NOV US and Grant Prideco Defendants based on the NOV Norway/ARPD contract during its life.

Defendants urge the Court to apply equitable estoppel based on the intertwined nature of the contracts and of Plaintiffs' allegations against all Defendants. (*See* Doc. No. 133 at 9-10; Doc. No. 142 at 5; Tr. of Motion Hrg., Doc. No. 145 at 42.) Under Texas law, however, it is not enough that claims are intertwined.[1] Moreover, the NOV US and Grant Prideco Defendants have their own contracts with Plaintiffs, some of which have arbitration clauses and some of which do not. The Court cannot allow Defendants to rewrite those contracts by means of the doctrine of equitable estoppel. *See In re Merrill Lynch*, 235 S.W.3d at 191 ("Those affiliates signed their own contracts with the plaintiffs, which had no arbitration clauses. As allowing these affiliates to

---

[1] It is true that a handful of Court of Appeals cases beginning with *Cotton Commercial USA, Inc. v. Clear Creek Independent School Dist.*, 387 S.W.3d 99, 102 (Tex. App. 2012), have applied an "intertwined-claims" test to determine when equitable estoppel applies. *See, e.g.*, *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App. 2014), *reh'g overruled* (July 29, 2014), *review denied* (Nov. 7, 2014); *Zars v. Brownlow*, No. 07-07-00303-CV, 2013 WL 3355660, at *4 (Tex. App. June 28, 2013). However, it appears that *Cotton Commercial* misread the Texas Supreme Court's decision in *In re Merrill Lynch* as recognizing an "intertwined-claims" test as its own, when in fact all the Texas Supreme Court simply acknowledged that "other federal circuits have estopped signatory plaintiffs from avoiding arbitration with nonsignatories using an 'intertwined-claims' test." *In re Merrill Lynch*, 235 S.W.3d at 193-94. As the Texas Supreme Court explained, the "intertwined-claims" test is generally used to root out "instances of strategic pleading by a signatory who, in lieu of suing the other party for breach, instead sues that party's nonsignatory principals or agents for pulling the strings." *Id*. at 194.

8

compel arbitration would effectively rewrite their contracts, we hold they cannot."). Defendants' Motion to Compel Arbitration based on the ORGALIME S 2000 therefore is **DENIED**.

### III. ARBITRATION BASED ON NOV LP CONTRACTS

In the alternative to their equitable estoppel argument, Defendants argue that all parties should be required to arbitrate because the contracts between NOV LP and ARPD contain their own arbitration agreement. Plaintiffs respond that Defendants have waived both this argument and their right to arbitration itself; that the NOV LP arbitration clause is superseded by a forum selection clause; and that the clause is insufficiently drafted to compel ICC arbitration.

#### A. The NOV LP/ARPD Contracts

Defendants provide a copy of a contract between NOV LP and ARPD. (Doc. No. 133, Exh. B.) The contract contains an attachment titled "National Oilwell Varco Worldwide Terms and Conditions to Sale." (*Id*. at 14.) Paragraph 13 of the Terms and Conditions states, in part, "Varco retains the right to arbitrate and any all [sic] disputes that may arise in connection with the sale of its Equipment, Product or Services." (*Id*. at 16.) As a preliminary matter, Defendants have established that an arbitration agreement exists between NOV LP and ARPD. However, Defendants also argue that this arbitration provision applies to all of the NOV US entities and NOV Norway, because "Varco" is defined in the first paragraph of the Terms and Conditions to include "Varco, L.P., on behalf of itself and its divisions and subsidiaries." (*Id*. at 14.)

Defendants' argument is belied by their own evidence. Defendants also provide an Affidavit of Amiel A. Nguyen, a Legal Assistant in the Office of the Corporate Secretary of NOV LP. (Doc. No. 133, Exh. D.) Affiant Nguyen explains the corporate relationships among the NOV entities: NOV Inc. is the "ultimate corporate parent," with NOV LP, NOW Oilfeld Services, NOV Norway, and Grant Prideco as wholly-owned subsidiaries of NOV, Inc. None of

9

the Defendants is described to be a division or subsidiary of NOV LP. Therefore, to the extent the arbitration clause in the NOV LP/ARPD contract is enforced, it can be enforced only as to NOV LP.

### B. Waiver of the Argument

Plaintiffs make two different waiver arguments. Their first argument is that Defendants should not be allowed to rely on the arbitration clause contained in the NOV LP/ARPD contract now because Defendants previously chose not to argue the point. (*See* Doc. No. 134 at 14.) Plaintiffs contend that Defendants should not get a "second bite at the apple." (*Id*.)

Although they cite no case law in support of their position, elsewhere in their Response to Defendants' Motion to Compel, Plaintiffs cite to the Fifth Circuit opinion in *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 239-40 (5th Cir. 2012), for the proposition that the waiver doctrine holds that an issue that could have been raised on appeal but was not, is forfeited and may not be revisited by the district court on remand. However, Plaintiffs miss a key element of the waiver doctrine – that the doctrine bars issues *decided* by the lower court that *could* have been raised on appeal but were *not*. *U.S. v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) ("the rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived"); *see also Medical Center Pharmacy v. Holder*, 634 F.3d 830, 834-35 (5th Cir. 2011) (summarizing other Fifth Circuit cases). This Court's prior opinion was limited to "whether the contract between ARP and NOV Norway contained an arbitration clause." *Al Rushaid*, 2013 WL 1124070 at *1. This Court did not make any other decisions relative to the nonsignatory Defendants and so waiver of argument is not a concern.

### C. Waiver of Arbitration

Plaintiffs' second waiver argument is one that has been addressed previously by this Court and by the Fifth Circuit – namely, whether Defendants have waived their right to arbitration by substantially invoking the litigation process.

"The right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR*, 565 F.3d 904, 907 (5th Cir.2004). "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 496–97 (5th Cir.1986). A party generally invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims. *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir.2002). But "waiver can also result from some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id*. (internal quotations omitted). "Courts within the Fifth Circuit 'indulge a presumption against finding waiver. A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate.'" *Kassell v. Crafton*, No. A-12-CA-669 LY, 2013 WL 6709447, at *13 (W.D. Tex. Dec. 18, 2013) (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir.1991)); *see also Pacheco v. PCM Const. Servs., L.L.C.*, No. 14-10193, 2015 WL 690273, at *3 (5th Cir. Feb. 19, 2015) ("There is, however, a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden.") (internal citations omitted).

This Court previously found that "Defendants substantially invoked the litigation process, benefitting from liberal discovery, and costing Plaintiffs hundreds of thousands of dollars in

11

discovery related legal fees." *Al Rushaid*, 2013 WL 1124070, at *4. Specifically, the Court noted:

> Defendants served over 400 separate document requests and 129 interrogatories, which included dozens of requests for documents and information concerning NOV Norway. (Doc. No. 103 p. 6.) Plaintiff reported producing over 130,000 pages of documents. (Id. at p. 7.) Defendants also agreed to a scheduling order (Doc. No. 64), moved for a more definite statement (Doc. No. 25), filed initial disclosures (Doc. No. 27), served subpoenas on third-parties and sought related protective orders from the Court (Doc. Nos.29, 33, 54, 55), and answered the complaint and asserted counterclaims. (Doc. No. 68.)

*Id.* Plaintiffs urge the Court to rely on these earlier findings and its previous analysis of Fifth Circuit precedent in support. Plaintiffs note that in, reversing this Court's decision on the arbitration agreement's validity, the Fifth Circuit "did not suggest that this Court should reconsider its findings, apply the law any differently, or otherwise doubt the findings relating to the nonsignatory defendants." (Doc. No. 134 at 13.)

Defendants, on the other hand, argue that the nonsignatories did not substantially invoke litigation, but rather "participated in litigation only to clarify Plaintiffs' allegations and protect their legal position." (Doc. No. 142 at 7.) Moreover, Defendants argue that Plaintiffs would not be prejudiced by arbitration because (1) they had notice that Defendants intended to assert their arbitration rights; (2) Plaintiffs produced documents pursuant to Defendants' requests without regard to responsiveness; and (3) what discovery was conducted will be useful in arbitration. (*Id*. at 7-10.)

Upon reconsideration of the parties' legal arguments and the procedural circumstances of this case, the Court agrees with Defendants that Plaintiffs have not met their heavy burden to prove waiver. In cases where parties seeking to compel arbitration have taken litigation steps similar to those Defendants have taken here, the Fifth Circuit has declined to find waiver. *See, e.g.*, *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 898 (5th Cir. 2005) (no waiver

where party seeking arbitration filed summary judgment motion and sought discovery but did not "shower the opposing party with interrogatories and discovery requests"); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (no waiver where "[w]hat little discovery was propounded by [defendant] either never was answered by plaintiffs or still will be relevant when the suit proceeds in arbitration"); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924 (5th Cir. 1970) (no waiver where party seeking arbitration filed a motion for summary judgment, motion to dismiss, and a counterclaim, and had attempted to implead third persons, and where opposing party had taken depositions). Moreover, Defendants have evinced their desire to arbitrate from the beginning. This case was removed based on the Federal Arbitration Act's applicability to the NOV LP/ARPD arbitration clauses (*see* Doc. No. 1 at 2-3); Defendants quoted the NOV LP/ARPD arbitration clause in their Response to Plaintiff's Motion to Remand (Doc. No. 12 at 3); and pleaded arbitration as an affirmative defense in their Answer to Plaintiffs' Second Amended Complaint. (Doc. No. 68 at 22.) Plaintiffs are compelled to arbitrate their claims against NOV LP based on the NOV LP/ARPD contracts.

      **D.**      **Forum Selection Clause**

In addition to their waiver arguments, Plaintiffs contend that, although early quotations from NOV LP included arbitration clauses, they were superseded by subsequent versions that did not contain arbitration clauses. Moreover, Plaintiffs argue, when NOV LP sent an invoice, that writing contained a different set of terms and conditions, that included (a) a merger clause and (b) a forum selection clause. (Doc. No. 134 at 16, quoting Doc. No. 103, Exh. J.) The merger clause reads as follows:

> NO TERMS OR CONDITIONS, OTHER THAN THOSE STATED HEREIN, AND NO AGREEMENT OR UNDERSTANDING, ORAL OR WRITTEN, IN ANY WAY PURPORTING TO MODIFY THESE TERMS AND CONDITIONS, WHETHER CONTAINED IN BUYER'S PURCHASE OR

> SHIPPING RELEASE FORMS, OR ELSEWHERE, SHALL BE BINDING ON NATIONAL-OILWELL, L.P., ITS AFFILIATES, PARENTS OR SUBSIDIARY ENTITIES ("SELLER") AND ANY SUCH ATTEMPTED MODIFICATIONS ARE HEREBY REJECTED BY SELLER. ALL PROPOSALS, NEGOTIATIONS, AND REPRESENTATIONS, IF ANY, MADE PRIOR, AND WITH REFERENCE HERETO, ARE MERGED HEREIN.

(Doc. No. 103, Exh. J.) Defendants respond that the "merger clause" provides that "(1) subsequent modifications to the terms and conditions are not permitted, and (2) prior representations that reference the terms and conditions are merged into the invoice." (Doc. No. 142 at 5.) They contend that the contract containing the NOV LP arbitration clause neither modifies nor references the terms and conditions, and that the two writings should be harmonized to mean that only non-arbitrable disputes should be litigated in the selected forum.

The Court agrees with Defendants. The arbitration clause's language of "retaining the right" to arbitrate is not overcome by the later forum selection clause; the forum is selected only where NOV LP declines to exercise its right to arbitrate.

### E. Arbitration Forum Not Specified

Finally, Plaintiffs note that, because the arbitration provision at issue in the NOV LP contract does not specify a location for the arbitration, this Court may compel arbitration only within the Southern District of Texas. (Doc. No. 134 at 12 n. 6.) *See* 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.") Defendants "acknowledge that if the Court compels arbitration under the NOV LP clause, it can only do so within its district." (Doc. No. 142 at 6 n. 8.)

### F. Conclusion

Plaintiffs are compelled to arbitrate their claims against NOV LP, pursuant to the arbitration clause found in the "National Oilwell Varco Worldwide Terms and Conditions to Sale." NOV LP has not waived its right to arbitration, nor is the arbitration clause rendered inoperable by subsequent writings. Pursuant to 9 U.S.C. § 4, the Court compels NOV LP and Plaintiffs to arbitrate their claims within the Southern District of Texas.

## IV. REMAND

The final issue presented by Defendants concerns the disposition of any remaining, non-arbitrable claims. Defendants argue that the Court should exercise its removal jurisdiction only over claims to determine their arbitrability; for claims that are not subject to arbitration, remand to state court is appropriate. In discussing the scope of the Federal Arbitration Act's removal provision, the Fifth Circuit has explained:

> Under § 205 [the provision providing for removal of questions of arbitrability], however, the federal issue in cases will often be resolved early enough to permit remand to the state court for a decision on the merits. The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205. If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court. *See* 28 U.S.C. § 1441(c) (granting district court discretion to remand all claims in which state law predominates); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir.1992) (noting that when all federal claims are resolved early in a lawsuit and only state law claims remain, the district court almost always should remand to the state court); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989) (same). Except for state law claims that turn out to be subject to arbitration, § 205 will rarely permanently deprive a state court of the power to decide claims properly brought before it. The district court will ordinarily remand those cases that turn out not to be subject to arbitration, such that the state court will be able to resolve the merits of the dispute.

*Beiser v. Weyler*, 284 F.3d 665, 674-75 (5th Cir. 2002). Defendants argue that the Court should follow the Fifth Circuit's general direction and exercise its discretion to remand the remaining

claims to state court. Plaintiffs respond that this is not the typical case because it has been pending in the federal courts for so long and because arbitrability was not the first issue to be decided. They urge this Court to exercise supplemental jurisdiction over the state law claims, citing in support to cases where supplemental jurisdiction was proper because there had been significant litigation at the federal level. *See, e.g. Brookshire Bros. Holding Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602-03 (5th Cir. 2009) (collecting cases).[2]

The Court finds that the litigation in this case at the federal level has not been significant, particularly in comparison to Fifth Circuit cases where remand was deemed inappropriate. Discovery has not been extensive, *cf. Newport Ltd. v. Sears, Roebuck and Co.,* 941 F.2d 302, 308 (5th Cir.1991) (holding that the district court abused its discretion in remanding state law claims because those claims presented no novel or especially unusual questions and the litigation in federal court had proceeded for four years and produced twenty-three volumes and thousands of pages of record, resulted in the preparation of a pretrial order exceeding two-hundred pages, over a hundred depositions, and nearly two-hundred-thousand pages of discovery production); nor has the Court considered motions to dismiss or for summary judgment, *cf. Batiste v. Island Records,*

---

[2] *See, e.g.*, *Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 456 (5th Cir.1996) (finding that district court did not abuse its discretion in retaining jurisdiction over state law claims because it did not raise any novel or unsettled issues of state law and, at the time of remand, the lawsuit had been in litigation for more than two years, the trial date was less than a month away, the parties had already filed more than 300 pleadings, most of the parties had already prepared extensive discovery disclosures, and summary judgment motions on behalf of many of the remaining defendants were pending); *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 587–90 (5th Cir.1992) (finding that the district court abused its discretion in retaining jurisdiction over state-law claims following the dismissal of all federal-law claims because the proceedings were at a relatively early stage when the district court elected to retain jurisdiction after dismissing all federal claims—the case had been pending for only nine months and discovery had not been completed—and there was no indication that the district judge had substantial familiarity with the merits of the case; trying the remaining state issues in state court would not impose any significant addition, penal burdens on the parties such as repeating the effort and expense of the discovery process; the relitigation of procedural matters in state court would not pose any undue hardship; and the case involved difficult state-law issues that were best left to the state courts); *Newport Ltd. v. Sears, Roebuck and Co.,* 941 F.2d 302, 308 (5th Cir.1991) (holding that the district court abused its discretion in remanding state law claims because those claims presented no novel or especially unusual questions and the litigation in federal court had proceeded for four years and produced twenty-three volumes and thousands of pages of record, resulted in the preparation of a pretrial order exceeding two-hundred pages, over a hundred depositions, and nearly two-hundred-thousand pages of discovery production).

*Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (holding that the district court abused its discretion in declining to exercise supplemental jurisdiction over remaining state-law claims due to the absence of any difficult state-law issue in the remaining claims and the district court's intimate familiarity with the claims as a result of the fact that the case had been pending in the district court for almost three years, produced more than sixteen volumes of record, resulted in numerous depositions and discovery disputes, and required significant consideration by the district court of multiple motions to dismiss claims or grant summary judgment). Remand of the remaining, non-arbitrable claims is therefore appropriate. Whether a stay of those remaining claims is required is for the state court to decide.

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion to Compel Arbitration is **DENIED IN PART** and **GRANTED IN PART**. Plaintiffs are not required to arbitrate based on the ORGALIME S 2000; however, Plaintiffs are **ORDERED** to arbitrate their claims against NOV LP within the Southern District of Texas. Plaintiffs' remaining claims against NOV, Inc., NOW Oilfield Services, and the Grant Prideco Defendants are hereby **REMANDED** to the District Court sitting in Harris County, Texas, 165th Judicial District.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 7th day of April, 2015.

*/s/ Keith P. Ellison*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE